**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**KENNETH BALK AND ASSOCIATES, INC., Defendant.**

**No. 84–1959C(1).**

United States District Court,
E.D. Missouri, E.D.

Aug. 26, 1985.

---

**638**

James R. Neely, Jr., Gretchen D. Huston, Ferne P. Wolff, E.E.O.C., St. Louis, Mo., Johnny J. Butler, Michael Middleton, E.E. O.C., Washington, D.C., Morgan Stewart, St. Louis, Mo., for plaintiff.

G. Carroll Stribling, Jr., St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, Chief Judge.

This is an employment discrimination case wherein plaintiff alleges that defendant discriminated against Margo Mischeaux by terminating her because of her race and/or thereafter failing to offer her other and alternative employment with defendant because of her race.

This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 52.

## A. FINDINGS OF FACT

1. Plaintiff Equal Employment Opportunity Commission (hereinafter "EEOC") is an agency of the United States of America charged with administration and enforcement of Title VII of the Civil Rights Act of 1964, as amended, and is expressly autho-rized by § 706(e) to bring this action. 42 U.S.C. § 2000e–5(f)(1).

2. Defendant Kenneth Balk and Associates, Inc. (hereinafter "KBA"), is a corporation engaged in the architecture and engineering business in St. Louis County, Missouri. KBA employs more than fifteen (15) employees and is engaged in an industry affecting commerce. KBA employs professional, clerical and accounting employees. KBA's employees are divided into a number of divisions, among them the accounting and finance division. KBA's accounting and finance division was divided into four (4) distinct groups: project cost accounting, data processing, accounts payable and bookkeeping. These four (4) functions were overseen prior to 1981 by Ron Silber, the Corporate Treasurer and Vice President of Finance of KBA and, after his termination from employment in 1981, by Stephen Gossett, Treasurer of KBA.

3. Margo Mischeaux is a black female who was employed by KBA as a keypunch operator. Margo Mischeaux was hired by KBA on April 5, 1978 and was discharged on March 18, 1983. On April 5, 1978, Margo Mischeaux did not have the necessary skills or knowledge to operate the general automation computer, but she subsequently learned how to operate said computer and, after its replacement with a IV–Phase computer terminal tied to a main computer at McDonnell Douglas Automation Company, she operated the IV–Phase terminal. By the end of her employment in 1983, Margo Mischeaux was responsible for data entry upon the IV–Phase terminal, running reports on the IV–Phase terminal, calling and transmitting data to the main computer at McDonnell Douglas Automation Company, occasional ordering of supplies and occasional backup for other accounting clerks. Generally, Margo Mischeaux's duties with KBA never involved word processing, receptionist or secretarial duties. At the time of her discharge, Margo Mischeaux's annual salary was $18,480.00.

4. On May 12, 1983, Margo Mischeaux filed a charge of discrimination with EEOC alleging that KBA had discharged her be-

cause of her race. On May 13, 1983, Margo Mischeaux's charge was referred to the Commission on Human Rights which waived jurisdiction. Thereafter, KBA was served with notice that Margo Mischeaux's charge had been filed and EEOC proceeded to investigate Margo Mischeaux's charge. On February 29, 1984, EEOC issued a letter of determination finding reasonable cause to believe KBA had eliminated Margo Mischeaux's position and discharged her because of her race, black. On February 29, 1984, EEOC mailed an invitation to KBA to participate in conciliation. However, on March 16, 1984, asserting that it had not discriminated against Margo Mischeaux, KBA declined to participate in conciliation. On April 16, 1984, KBA was advised that conciliation had failed and, on August 20, 1984, over thirty (30) days after Margo Mischeaux's charge was filed with EEOC, this lawsuit was filed by EEOC.

5. In 1980, KBA lost $47,000.00 and in 1981, KBA lost $170,000.00. In addition, during 1981 and 1982, KBA's current ratio approached 1 and KBA's debt to equity ratio exceeded 13 to 1. Thus, KBA was close to financial insolvency.

6. As a result of KBA's poor financial performance, beginning in 1980 KBA initiated an effort to cut costs through staff reductions, salary eliminations and overhead reductions. For example, during the period from April, 1980 through May, 1984, numerous employment positions were eliminated through layoffs, attrition, discharges and the deactivation of an entire division, the construction management division. Considerably more white employees than black employees were affected by this effort. In many cases, when a position was eliminated or vacated, a new person was not rehired and the job functions of that position were spread among other employees. For example, in the accounting and finance division, when the Corporate Treasurer, Ron Silber, was discharged, he was not replaced because Stephen Gossett and other members of the firm assumed his duties.

7. The accounting and finance division was severely affected by these economizing measures. During the period from January 1, 1980 through April 1, 1983, the division was reduced from eight (8) to four (4) employees through attrition, layoffs, or job elimination. These measures saved KBA in excess of $150,000.00 per year in salaries in the accounting and finance division alone. The discharge of Margo Mischeaux was part of KBA's economizing efforts. In late 1982 and early 1983 KBA was still losing money, to the tune of $35,000.00 for the first five months ending January 31, 1983. As a result, KBA's President told Stephen Gossett in November, 1982 and again in January or February of 1983 to formulate a plan for reducing his department's expenses. In February, 1983, the plan that Stephen Gossett came up with was to eliminate one (1) position and to spread out that person's duties among the remaining employees in the accounting and finance division. This Court credits Stephen Gossett's testimony that he selected Margo Mischeaux's position for elimination based on a careful evaluation of each job, the training and skills required for each job, the ease of fragmenting the work performed in each job, the work history and potential future of each employee, and the current salary of each employee. Stephen Gossett's selection of Margo Mischeaux's position for elimination was not in any way, shape or form motivated by consideration of Margo Mischeaux's race. Margo Mischeaux's position was chosen for elimination because its functions could be split up easier than the functions of other positions and because Margo Mischeaux's salary was the second highest, below Stephen Gossett's salary, in the division. Margo Mischeaux's position basically consisted of data entry on a CRT, supply ordering, and running reports on the IV–Phase terminal. Other employees in the division were already performing data entry on a CRT and ordering supplies, and another employee could be trained to operate the IV–Phase terminal. Stephen Gossett consulted the President of KBA, Kenneth Balk, and he approved of Stephen Gossett's plan. Mr.

Balk's approval of the plan also was not motivated in any respect by Margo Mischeaux's race. Her discharge was simply a matter of economics.

9. Not only was Stephen Gossett's selection of Margo Mischeaux's position for elimination not motivated by racial discrimination, but the record supports the finding that Margo Mischeaux and Stephen Gossett were close friends and that KBA was satisfied with Margo Mischeaux's performance of her job duties. For example, Stephen Gossett attempted to find Margo Mischeaux alternative employment before she left. Following her layoff on March 18, 1983, Margo Mischeaux was given one (1) month's additional salary under an agreement that if her services were needed during that month in order to take care of problems which might develop as a result of the transition from five (5) employees to four (4) in the department, she would come in and work. In addition, Kenneth Balk authorized Stephen Gossett to spend up to $1,000.00 on employment consultants to assist in Margo Mischeaux's placement. Stephen Gossett also gave Margo Mischeaux two letters of recommendation.

10. Margo Mischeaux's position was, in fact, eliminated and the accounting department has not hired additional employees since Margo Mischeaux's discharge.

11. Since Margo Mischeaux's discharge from KBA, the only non-professional positions filled by KBA have been those of receptionist/backup word processing operator, word processing operator, executive secretary and administrative assistant. Margo Mischeaux was not qualified for any of these positions. Several of these positions were advertised in St. Louis area newspapers, but she did not apply for any of them. Examples of work performed by Margo Mischeaux at KBA supports KBA's conclusion that she lacked the necessary spelling, punctuation, Syntax and grammar skills for these positions. Moreover, the persons hired for these positions had qualifications in excess of those possessed by Margo Mischeaux.

## B. CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter and the parties. In addition, venue in this District is proper. All conditions precedent to the institution of this suit have been fulfilled.

 To establish a *prima facie* case of discriminatory discharge, plaintiff must show that Margo Mischeaux was a member of a protected class, was capable of performing her job, and was discharged from her job. *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 602 (8th Cir.1983). The burden then shifts to defendant to articulate some legitimate, non-discriminatory reason for the discharge. *Id.* at 603. The employer is only required to present admissible evidence sufficient to raise a genuine factual issue as to whether plaintiff was discriminated against. *Id.* If defendant offers such evidence, the inference of discrimination resulting from establishment of the *prima facie* case disappears. *Id.* The ultimate burden of persuasion with respect to whether defendant intentionally discriminated against plaintiff remains on plaintiff. *Id.*

 In the case at bar, plaintiff established a *prima facie* case of race discrimination by establishing that Margo Mischeaux is black, that she was capable of performing her job, and that she was discharged. However, defendant articulated a legitimate, non-discriminatory reason for discharging Margo Mischeaux, namely, that her position was eliminated out of economic necessity. *See Findings of Fact Nos. 5, 6, 7* and *8.* This reason was not pretextual. *See Findings of Fact No. 8.* Margo Mischeaux's race did not play any part in KBA's decision to discharge her. *See Findings of Fact No. 8.* In addition, KBA did not fail to rehire Margo Mischeaux due to her race. With respect to other positions in KBA that were filled subsequent to her discharge, Margo Mischeaux was either not qualified and/or the person hired for said position was more qualified than Margo Mischeaux. *See Findings of Fact No. 11.* Accordingly,

EEOC failed to carry its burden that KBA's discharge and failure to rehire Margo Mischeaux were racially motivated. Defendant is entitled to a judgment in its favor on plaintiff's complaint.

A word is in order with respect to the conduct of plaintiff in this case. The complaint in this case was filed on August 20, 1984, and the trial of this matter began on February 11, 1985. Despite having had over five (5) months to prepare this case, plaintiff complained of being unprepared and being forced to trial on schedule. In the opinion of this Court, there was nothing complex or difficult about preparing this case and there was no reason for a competent attorney not to be totally prepared on the date that this case went to trial. The plaintiff's case was weak and no amount of preparation could have remedied this problem.